**In re Glenn I. LEWIS and Karen Lewis, Debtors.**

**Bankruptcy No. 94–47483 NP.**

United States Bankruptcy Court, N.D. California.

Aug. 3, 1995.

Melanie Darling, Oakland, CA, for debtors.

Marc Fisher, Alameda, CA, for General Motors Acceptance Corp.

OPINION

RANDALL J. NEWSOME, Bankruptcy Judge.

On August 11, 1993 Glenn and Karen Lewis (Debtors) entered into a "SmartBuy" contract with General Motors Acceptance Corporation ("GMAC")[1] to acquire a 1993 Geo automobile. The contract provides for the Debtors to pay GMAC a $5,350 down payment and then $363.23 monthly for the next 23 months. The Debtors are also responsible for maintenance and insurance on the

---

1. The seller, F.H. Dailey Motor Co., apparently assigned the contract to GMAC. The Court deems GMAC to stand in the shoes of the seller for purposes of this Opinion.

vehicle. As of the 24th month the contract allows the Debtors the following "options":

1. Pay the payment due at the end of the contract term on its due date;
2. Sell the vehicle to GMAC and have the Sale Price applied to the payment due at the end of the contract term; and pay GMAC any excess of the payment due at the end of the contract term over the Sale Price; or
3. Enter into a new written agreement with GMAC to refinance the payment due at the end of the Contract term.

Other than these "option" provisions, the contract's four pages of single-spaced small print have all of the earmarks of a retail installment sale contract. It is captioned as such; refers to the transferee of the Geo as a "buyer" throughout; and states that the buyer is "giving a security interest in the vehicle being purchased." It is different from the usual form of such contracts in that it provides for a balloon payment of the total balance owed after 24 months. It also imposes a 10-cent per mile penalty for every mile driven over 30,000 miles, but only in the event the buyer chooses to sell the vehicle back to GMAC when the balloon payment comes due.

Before the end of the 24 month period the Debtors filed a petition for bankruptcy in Chapter 13. The Debtor's Chapter 13 plan seeks to treat GMAC as a secured creditor and pay off the remaining value of the vehicle over 60 months. 11 U.S.C. § 1325(a)(5)(B)(ii). GMAC objects to this treatment, contending that the contract is executory and may not be so modified but must be assumed or rejected, with all the attendant consequences those choices entail. 11 U.S.C. § 365(b)(1); 365(g).

The issue presented is whether the payoff options at the end of the contract term effectively transform a nonexecutory retail installment sales agreement into an executory contract. The U.S. Court of Appeals for the Ninth Circuit has adopted the definition of "executory contract" first proposed by Professor Vern Countryman in 1973:

A contract is executory where the obligations "of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other."

*In re Pacific Express, Inc.*, 780 F.2d 1482, 1487 (9th Cir.1986). In applying this definition to a particular contract, a Court

must first evaluate the obligations of both parties and determine whether they are material obligations. . . .

Next we determine whether on the date the petition was filed . . . either party's failure to perform its *remaining obligations* would give rise to a material breach and excuse performance. . . . If either party has "substantially performed" its side of the bargain, such that the party's failure to perform further would not excuse performance by the other party, then the contract is not executory. . . . The materiality of a remaining obligation and whether the failure to perform a *remaining obligation* is a material breach of the contract is an issue of state law. [Citations omitted]

*In re Texscan Corp.*, 976 F.2d 1269, 1272 (9th Cir.1992).

The heart of the parties' contract is for GMAC to provide the debtors with a Geo, and for the debtors to pay the Geo's total purchase price. While it is true that GMAC may be called upon either to refinance the purchase price or to purchase the car at the end of the contract term, those obligations are subject to so many loosely-worded conditions as to leave performance almost completely within the discretion of GMAC. Given its ability to manipulate performance under the options, it is difficult to find that GMAC has any remaining obligation to perform, let alone *material* obligations.

Even if these "obligations" are material, neither the contract nor California law would excuse the debtors from fully performing their payment obligation if GMAC failed to perform under one of the options. As noted in 1 B.E. Witkin, *Summary of California Law–Contracts* § 794 at 718 (9th Ed.1987)

After considerable performance, a slight breach which does not go "to the root of

the contract" will not justify termination. (*See Karz v. Department of Professional Vocational Standards* (1936) 11 C.A.2d [Cal.App.2d] 554, 557, 54 P.2d 35....

The root of the contract from GMAC's standpoint is to deliver a car, not to assist the buyers in paying for it. Having long since delivered the Geo to the buyers, GMAC has substantially (if not entirely) performed its side of the bargain. As the Ninth Circuit noted in *In re Pacific Express, Inc.*, 780 F.2d 1482, 1487 (9th Cir.1986), albeit in a different context:

> Physical delivery is the key aspect of the seller's performance in an installment sale of goods, as well as the act that usually passes title to the buyer ... For this reason, a mere installment sale no longer involves an executory contract when the seller has already delivered the thing sold.

Assuming for the sake of argument that the SmartBuy contract could be characterized as something more than "a mere installment sale," it is difficult to fathom how any breach of the repurchase or refinance options by GMAC could be deemed material. Given the conditions placed on GMAC's performance at the end of the contract term, it would be extremely difficult for the buyers to assert that GMAC had any obligation to do anything, let alone prove that an obligation had been breached. But even if they could prove such a breach, they surely could not claim that they were thereby excused from paying the remainder of the purchase price. Since the refinance and repurchase options were merely ways for the debtors to fulfill their essential obligation under the contract (i.e. to fully pay), any failure by GMAC to perform when the balloon payment comes due at most would constitute a slight breach, not a material one. *See In re Keblish*, 180 B.R. 176, 178 (Bankr.E.D.Tex.1995); *In re Cox*, 179 B.R. 495, 498 (Bankr.E.D.Tex.1995).

For these reasons, the Court finds the SmartBuy contract to be nothing more than a secured retail installment sales contract, not an executory contract. Accordingly, GMAC's objection to confirmation of the Debtors' Chapter 13 plan is hereby DENIED.