[Crim. No. 824. Fifth Dist. May 18, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
KATHERYN WILLINA HATHCOCK, Defendant and Appellant.

## Counsel

William M. Young for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Edsel W. Haws and Charles P. Just, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**GARGANO, J.**—The defendant was convicted of perjury in violation of section 118 of the Penal Code. The facts upon which her conviction was predicated are substantially as follows:

On the last day of January or the first day of February 1968, Barbara Simmons was driven from Fresno to Madera County and shot to death. Sometime later appellant, who was the wife of one of the suspects, Weldon Lee Hathcock, was granted immunity pursuant to Penal Code section 1324 from prosecution for any offense arising from the murder. Thereafter, she gave a written statement to the district attorney implicating her former husband in the killing. Appellant also testified as a witness for the prosecution at Hathcock's first trial; that trial ended in a mistrial.

At Hathcock's second trial, appellant was again called as a witness for the prosecution. She testified that her former husband ordered her to drive the murder victim and another man to Madera County. She said that when they arrived near the place where the murder occurred, she was told to stop the vehicle, and the two men and Barbara Simmons got out and walked several feet away; appellant heard a shot and then she heard several more shots before Hathcock and the other man returned to the automobile and told her to take them home.

After Mrs. Hathcock implicated her husband in the murder of Barbara Simmons, the prosecutor asked her if she had told the defense attorney that her former husband was not involved in the murder; the witness answered in the affirmative; then the prosecutor inquired if what she had told defense counsel was true, and the witness said, "Your Honor, I can't answer that question truthfully. May I—I'll have a perjury charge if I do." Following some colloquy between court and counsel, the court asked the witness if she wanted to consult an attorney before the questioning resumed. The witness said that she did, and the court declared a recess.

On the following day the examination of Mrs. Hathcock was conducted in the presence of her attorney. She was ultimately questioned by defense counsel about the content of a letter she had written to her husband in jail in which she had said, "I know in my heart you didn't do what they are saying?" Counsel asked her what she meant by that statement, and appellant replied, "Because I knew he didn't do it." Upon redirect examination the prosecutor asked, "Mrs. Hathcock, how did you know he hadn't done it." She answered, "Because he wasn't there." It is this answer that formed the basis for her prosecution for perjury.

There was ample evidence to sustain the jury's verdict that Mrs. Hath-

cock committed perjury at her former husband's second trial, and a prolonged discussion on this point serves no useful purpose (Pen. Code, § 118; *People* v. *Roubus,* 65 Cal.2d 218 [53 Cal.Rptr. 281, 417 P.2d 865]; *People* v. *Chiuminatta,* 156 Cal.App.2d 169 [318 P.2d 753]; *People* v. *Macken,* 32 Cal.App.2d 31 [89 P.2d 173]). It is also clear beyond cavil that appellant was subject to prosecution for perjury even though she testified after she was granted immunity under Penal Code section 1324. The section expressly exempts the crime of perjury from the immunity granted by that section. And, in the leading case of *Glickstein* v. *United States,* 222 U.S. 139 [56 L.Ed. 128, 32 S.Ct. 71], the United States Supreme Court stated: "It is undoubted that the constitutional guaranty of the 5th Amendment does not deprive the lawmaking authority of the power to compel the giving of testimony, even although the testimony, when given, might serve to incriminate the one testifying, provided immunity be accorded, the immunity, of course, being required to be complete; that is to say, in all respects commensurate with the protection guaranteed by the constitutional limitation." ■ The pivotal question, therefore, is this: Can a witness who has been granted immunity under section 1324, and who has given testimony at a criminal trial, thereafter successfully assert the privilege against self-incrimination and refuse to answer a relevant question on the ground that the answer might tend to incriminate the witness for the crime of perjury committed at that very trial.

■ It is axiomatic that a person who had been called to testify as a witness at a trial, and who has sworn to tell the truth, is morally and legally bound to do so. It follows, by necessary implication, that a witness who testifies at a trial waives his privilege against self-incrimination as to any question which is thereafter asked to test the credulity of his testimony. A contrary rule could lead to unconscionable results, and in criminal trials could also countervene the defendant's right of confrontation as guaranteed by the Fourteenth Amendment to the United States Constitution; the rule would curtail cross-examination, and the right of cross-examination has been described as the most effective weapon ever devised for the ascertainment of truth. ■ Furthermore, a rule which would permit a witness who has been granted immunity under section 1324, and who has testified, to assert the privilege against self-incrimination in order to refuse to answer a question designed to test the credulity of his testimony would invite treachery as well as perjury. As the United States Supreme Court stated in *Glickstein* v. *United States, supra,* 222 U.S. 139, the purpose of immunity statutes is to secure truthful testimony, not to license perjury.

The issue presented herein parallels the issue presented when the defendant in a criminal trial voluntarily testifies in his own defense. ■ While

a defendant who testifies is still protected by the Fifth Amendment against self-incrimination, he must nevertheless answer all the questions asked by the cross-examiner to explain, clarify or refute any reasonable or logical inference arising from his testimony (*People* v. *Schader*, 71 Cal.2d 761 [80 Cal.Rptr. 1, 457 P.2d 841]). ■ Also, a witness who has derived the benefits of immunity and who has testified must be prepared to answer relevant probative questions.

In view of the foregoing, we do not reach appellant's contention that Mrs. Hathcock was not adequately represented by counsel at her former husband's second trial.

The judgment is affirmed.

Stone, P. J., and Brown (G. A.), J., concurred.