Opinion
 

 POTTER, Acting P. J.
 

 Defendant Terry Fernando Maxwell appeals from a judgment of conviction of false imprisonment (Pen. Code, § 236) as a lesser included offense of kidnaping (Pen. Code, § 207),
 
 [1]
 
 following a court trial. Defendant’s conviction was based upon evidence consisting chiefly of the testimony of the victim, Melinda Renee Russell, elicited at the preliminary hearing held on February 3, 1978.
 

 Russell’s testimony on direct examination revealed the following chronology of events: On December 8, 1977, at approximately 10:30 p.m., Russell drove into the driveway of her home in Compton, California, and parked her car. As Russell turned around (after reaching for a package in the back seat), defendant, who is the father of the victim’s child, put a gun to Russell’s head, threatened her life if she made any noise, ordered her to move to the passenger seat of her car, and began to drive the car. During the course of the next nine hours, until Russell’s release at approximately 8 a.m. the following morning, defendant drove to various locations throughout the county. Defendant drove to the Los Angeles International Airport and then to an area two blocks from the airport where he tearfully professed his love for the victim, demanded to know why she was going with another man, and offered to support her and the baby. At some point during this discourse defendant struck Russell in the head with a flashlight. Defendant then drove to the Kaiser Hospital in Bellflower at Russell’s request because she was complaining of chest pains. Following a diagnosis and medication for indigestion, defendant drove to Long Beach (allegedly to find out where Russell was staying). After a struggle there, during which defendant tried to choke Russell, defendant drove back to Compton. While defendant went to make a telephone call, Russell left the car and ran across the street to a friend’s house but was unable to locate her. Upon his return, defendant grabbed Russell and tried to hit her head against a tree. Finally, defendant drove
 
 *566
 
 to his apartment where he beat up the victim, then released her. Russell then drove to the Compton police station.
 

 Defense counsel’s extensive cross-examination of Russell at the preliminary hearing, which consumed about 40 pages of transcript,
 
 [2]
 
 probed the details of Russell’s account of the incident. Defense counsel elicited the facts that the defendant was the father of the victim’s 16-month-old child; that prior to driving to the Los Angeles International Airport defendant drove to a Jack-in-the-Box Restaurant; that at the hospital Russell did not inform the doctor that she was being kidnaped; and that when defendant had gone up to his apartment for about five minutes, Russell did not make any attempt to escape nor call for assistance. On the basis of Russell’s testimony at the preliminary hearing, the defendant was bound over for trial.
 

 On April 7, 1978, the court trial commenced. When Russell was called as a witness for the prosecution, she refused to testify and was furnished with an attorney. After conferring with her court-appointed attorney, Russell testified on direct examination that she was presently in love with the defendant and acknowledged that she had made a police report in the case. In response to further questioning, however, she refused to testify and invoked her Fifth Amendment privilege.
 

 The prosecutor moved to admit Russell’s preliminary hearing testimony into evidence under the former testimony exception to the hearsay rule (Evid. Code, § 1291) because the witness was unavailable (Evid. Code, § 240, subd. (a)).
 

 Defense counsel objected on the grounds that (1) there was no exception to the hearsay rule since the witness was present in court; (2) the use of former testimony by a victim asserting the Fifth Amendment privilege because of “possible incrimination along the lines of perjury and a false complaint to the police” contravened the basic premise of the former testimony exception to the hearsay rule (Evid. Code, § 1291) that the testimony be trustworthy; and (3) the use of such testimony violated the defendant’s Sixth Amendment right to confrontation of witnesses and his right to due process. Over defense counsel’s objections, the court granted the People’s motion to introduce Russell’s preliminary hearing testimony into evidence.
 

 
 *567
 
 The only other witness to testify for the prosecution was Investigator Jackson of the Compton police force. Jackson testified that he had observed injuries to the victim’s face and neck on December 10, 1977, and had taken four colored photographs of her. The photographs, which were admitted in evidence, showed such injuries.
 

 The defense then called Russell as its sole witness. In response to defense counsel’s questioning, she refused to testify, again invoking her privilege against self-incrimination. During the course of the direct examination by defense counsel, the following exchange occurred:
 

 “Q. By Mr. Lasting [Defense Counsel]: Miss Russell, when you made a police report and made various allegations against Mr. Maxwell concerning his kidnapping of you on December 9, 1977, did you tell the police the truth in that police report?
 

 “A. I refuse to testify.
 

 “Q. Is that on the ground that the answer may tend to incriminate you?
 

 “A. Yes.
 

 “The Court: And that’s after consulting with your lawyer, Mr. Fitzgerald?
 

 “The Witness: Right.
 

 “Mr. Lasting: Is the court sustaining the privilege?
 

 “The Court: The court will sustain the privilege. I find that it is a valid assertion.
 

 “Q. By Mr. Lasting: Miss Russell, you testified at a preliminary hearing on Friday, February 3rd, 1978. Was your testimony at that time truthful?
 

 “A. I refuse to testify.
 

 “Q. Is that on the basis that the answer to that question might tend to incriminate you, ma’am?
 

 “A. Yes.
 

 
 *568
 
 “Q. Is that because if you were to answer that question now that you might subject yourself to possible charges of perjury?
 

 “A. I refuse to testify.
 

 “Q. Is that on the Fifth Amendment basis, that the answer might tend to incriminate you?
 

 “A. Yes.
 

 “Q. Miss Russell, isn’t it a fact on December the 8th that you went out with Mr. Maxwell voluntarily, having met him at the Jack-in-the-Box at your suggestion?
 

 “A. I refuse to testify.
 

 “Q. Is that because if you would answer that question now truthfully that it would conflict with your testimony at the preliminary hearing, and that the answer might incriminate you?
 

 “A. Yes.
 

 “Q. And isn’t it a fact, Miss Russell, that on December the 8th you and Mr. Maxwell went out voluntarily, mid in the course of that evening you had an argument, and he beat you up, and that resulted in these charges?
 

 “A. I refuse to testify.”
 

 The defense then rested its case.
 

 After argument by both counsel, the court found defendant guilty of a violation of Penal Code section 236, as a lesser included offense of the charged offense of Penal Code section 207, stating that the preliminary hearing transcript was a sufficient basis for finding defendant guilty of false imprisonment. At the probation and sentencing hearing held on June 8, 1978, the court declared the offense to be a misdemeanor and granted defendant probation, without any custody time, for a period of two years on certain terms and conditions. This appeal followed.
 

 
 *569
 

 Contentions
 

 At issue is the admissibility and sufficiency of prior testimony by the prosecuting witness where her subsequent invocation at trial of her privilege against self-incrimination raises inferences of perjury.
 

 Defendant contends that (1) the preliminary hearing testimony was inadmissible because it did not meet the criteria of the former testimony exception to the hearsay rule (Evid. Code, § 1291) and violated his constitutional right to confrontation and cross-examination of witnesses; and (2) even if admissible, the testimony does not constitute substantial evidence “of solid value,” and reliance upon it to convict him violates due process.
 

 Discussion
 

 Summary
 

 Admission of Russell’s preliminary hearing testimony was proper. The testimony met the criteria of Evidence Code section 1291 and did not violate defendant’s witness-confrontation rights. The trial court properly sustained the privilege against self-incrimination, thus rendering Russell “unavailable.” Defense counsel had a similar motive to cross-examine Russell at the preliminary hearing as at trial, and he took full advantage of this opportunity by extensively cross-examining her.
 

 The circumstances of the witness’s claim of privilege suggest that her preliminary hearing testimony may have been false in part. But the trier of fact could accept one part of her testimony while rejecting another. We cannot say, as a matter of law, that the evidence is insufficient to support the conviction of false imprisonment or is so inherently untrustworthy that a conviction based upon it violates due process of law.
 

 Admission of the Preliminary Hearing Testimony Was Proper
 

 Russell’s preliminary hearing testimony was properly admitted pursuant to the former testimony exception to the hearsay rule (Evid. Code, § 1291).
 

 
 *570
 
 Evidence Code section 1291 provides in pertinent part: “(a) Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and:
 

 “(2) The party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing.”
 

 Evidence Code section 240, subdivision (a)(1), specifies that a declarant is “ ‘unavailable as a witness’ ” if exempted on the ground of privilege from testifying concerning the relevant matter. Thus Russell, although present at trial, was “unavailable” within the meaning of Evidence Code section 1291 if her claim of the privilege against self-incrimination was valid.
 

 In order properly to invoke this privilege: “[A] witness need not actually prove the existence of an incriminatory hazard as that would surrender the very protection which the privilege against self-incrimination was designed to guarantee. Instead, the privilege forbids compelled disclosures which could serve as a ‘link in a chain’ of evidence tending to establish guilt of a criminal offense; in ruling upon a claim of privilege, the trial court must find that it clearly appears from a consideration of all the circumstances in the case that an answer to the challenged question cannot possibly have a tendency to incriminate the witness.
 
 (Hoffman
 
 v.
 
 United States,
 
 341 U.S. 479, 486-488 [95 L.Ed. 1118, 1123-1125, 71 S.Ct. 814];
 
 Malloy
 
 v.
 
 Hogan, supra,
 
 378 U.S. 1, 11-12 [12 L.Ed.2d 653, 661-662];
 
 Zonver
 
 v.
 
 Superior Court,
 
 270 Cal.App.2d 613, 620 [76 Cal.Rptr. 10];
 
 Cohen
 
 v.
 
 Superior Court,
 
 173 Cal.App.2d 61, 68-70 [343 P.2d 286]; Evid. Code, § 404.)”
 
 (Prudhomme
 
 v.
 
 Superior Court
 
 (1970) 2 Cal.3d 320, 326 [85 Cal.Rptr. 129, 466 P.2d 673].)
 

 A witness who has testified in a prior proceeding is entitled to invoke this privilege and refuse to answer questions which might expose the witness to a prosecution for perjuiy by furnishing a fink in the chain of evidence tending to establish guilt of that offense.
 
 (People
 
 v.
 
 Lawrence
 
 (1959) 168 Cal.App.2d 510, 516-517 [336 P.2d 189];
 
 In re Berman
 
 (1930) 105 Cal.App.37, 45, 49-50 [287 P. 125].) In
 
 Lawrence,
 
 the appellate court upheld the trial court’s sustaining of the privilege on the ground that if
 
 *571
 
 the witness had testified at the trial contrary to his prior testimony (on voir dire), “he would have given evidence which would have
 
 tended
 
 to have convicted him of perjury in the giving of his former testimony.” (168 Cal.App.2d at p. 517.) (Italics added.) The
 
 Lawrence
 
 court pointed out that “[i]t is established in this state that a witness who testifies upon a preliminary examination does not thereby waive the privilege of not incriminating himself when called to testify at the trial which ensues.
 
 (Overend
 
 v.
 
 Superior Court
 
 [1900] 131 Cal. 280 [63 P. 372].)”
 
 (Ibid.)
 

 [3]
 

 Here, Russell indicated by her response to questioning by defense counsel that she refused to testify because of possible exposure to charges of perjury and also because her testimony as to some matters would “conflict” with her previous testimony at the preliminary hearing. The trial court, therefore, properly sustained her claim of privilege, rendering her “unavailable as a witness.” (Evid. Code, § 240, subd. (a).)
 

 Moreover, the use of the former testimony satisfied the requirements of Evidence Code section 1291 and the constitutional right of confrontation (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 15)
 
 [4]
 
 since defendant took full advantage of the opportunity to cross-examine the unavailable witness at the preliminary hearing with an interest and motive similar to that at trial. (See
 
 California
 
 v.
 
 Green
 
 (1970) 399 U.S. 149, 165-168 [26 L.Ed.2d 489, 501-503, 90 S.Ct. 1930];
 
 Barber
 
 v.
 
 Page
 
 (1968) 390 U.S. 719, 722, 725-726 [20 L.Ed.2d 255, 258, 260, 88 S.Ct. 1318];
 
 Pointer
 
 v.
 
 Texas
 
 (1965) 380 U.S. 400, 407 [13 L.Ed.2d 923, 928, 85 S.Ct. 1065];
 
 People
 
 v.
 
 Enriquez
 
 (1977) 19 Cal.3d 221, 235 [137 Cal.Rptr.
 
 *572
 
 171, 561 P.2d 261];
 
 People
 
 v.
 
 Williams
 
 (1968) 265 Cal.App.2d 888, 893-897 [71 Cal.Rptr. 773]; Evict. Code, § 1291, subd. (a)(2).)
 

 As was pointed out in
 
 People
 
 v.
 
 Johnson
 
 (1974) 39 Cal.App.3d 749, 755 [114 Cal.Rptr. 545]: “[T]he cases underscore that the interest and motive for the cross-examination of the prosecution witness at the preliminary hearing and at the trial are similar, notwithstanding that the cross-examination at the preliminary hearing may, by the very nature of that proceeding, be less reaching than at the trial. . . .” (See also
 
 People
 
 v.
 
 Salas
 
 (1976) 58 Cal.App.3d 460, 468 [129 Cal.Rptr. 871];
 
 People
 
 v.
 
 Benjamin
 
 (1970) 3 Cal.App.3d 687, 695 [83 Cal.Rptr. 764];
 
 People
 
 v.
 
 King
 
 (1969) 269 Cal.App.2d 40, 47 [74 Cal.Rptr. 679].)
 

 At both proceedings herein, the motive and interest of the defense were to destroy the credibility of the victim, the main prosecution witness, by any appropriate means. This included confronting her with any omitted facts and with conduct inconsistent with her version.
 

 Moreover, the cross-examination at the preliminary hearing was no less reaching than that which would have been appropriate at the trial; it was a searching exploration into all the various facets of Russell’s testimony to test her credibility. Among the matters-elicited on cross-examination were that defendant and Russell had stopped at a Jack-in-the-Box on the way, rather than going directly to the airport area; that at the hospital she did not tell the doctor she was being kidnaped; and that when defendant had gone up to his apartment for about five minutes, she did not try to run away from the car or call anyone for help.
 
 [5]
 

 Thus, defense counsel not only had an adequate opportunity to cross-examine her but also fully exploited that opportunity by exhaustively questioning her about all of the details of the alleged incident. The nature and scope of cross-examination were unrestricted. Indeed, we can conceive of no area of possible cross-examination that was left untouched. Russell’s cross-examination fills 40 pages of the reporter’s transcript, whereas the direct examination fills only 9 pages.
 
 [6]
 

 
 *573
 
 Defendant claims, however, that while preliminary hearing testimony normally would be admissible upon a proper invocation of the privilege against self-incrimination, the rule should be different and the testimony excluded (or stricken) where the witness’s invocation of the privilege is based upon exposure to charges of perjury.
 

 Defendant cites no authority indicating that the witness is any less unavailable under these circumstances or that the testimony is any less admissible, and we have found none. As we have previously observed, California authorities uphold a witness’s privilege where an answer contrary to prior testimony could furnish a link in the chain tending to establish the offense of perjury. But these authorities do not pass upon the admissibility of such prior testimony based upon unavailability of the witness under Evidence Code section 240, subdivision (a).
 

 The only case our research uncovered which involved use of prior testimony of a witness claiming the privilege based upon exposure to perjury prosecution is
 
 People
 
 v.
 
 Castaneda
 
 (1978) 81 Mich.App. 453 [265 N.W.2d 367]. In
 
 Castaneda,
 
 the Michigan appellate court upheld the admissibility in evidence of prior preliminary hearing testimony by a witness who had invoked his privilege against self-incrimination because of pending perjury charges. The witness had given incriminating testimony for the prosecution at the preliminary hearing and had been cross-examined. He later repudiated this testimony at defendant’s guilty plea revocation hearing. The court vacated the plea and perjury charges were pending against the witness at the time he claimed the privilege at the jury trial. The trial court permitted the testimony at both prior hearings to be read to the jury.
 

 The Michigan court held that it was proper to use the witness’s prior testimony because the witness was “unavailable” due to his claim of privilege. Defendant’s right of confrontation was not violated since the witness had been “vigorously cross-examined” (265 N.W.2d at p. 374) at the preliminary hearing and testified in defendant’s behalf at the guilty plea revocation hearing. No distinction was drawn between the effect of asserting the Fifth Amendment privilege on grounds of perjury rather than on any other grounds.
 

 
 *574
 
 In view of all of the above,
 
 [7]
 
 we similarly hold that the trial court properly admitted the prior preliminary hearing testimony in evidence.
 

 (4a)
 
 It Is Not a Denial of Due Process to Convict Solely on a Witness’s Testimony Admitted by Such Witness to Be False in Part
 

 In
 
 California
 
 v.
 
 Green, supra,
 
 399 U.S. 149, the United States Supreme Court recognized that “considerations of due process, wholly apart from the Confrontation Clause, might prevent convictions where a reliable evidentiary basis is totally lacking.”
 
 (Id.,
 
 at p. 163, fn. 15 [26 L.Ed.2d at p. 500].) Thus, even though Russell’s preliminary hearing testimony is admissible, it cannot support a conviction if the evidence is so unreliable as to deny defendant due process of law.
 

 Defendant contends that “evidence of her preliminary hearing testimony cannot be deemed ‘ “reasonable in nature, credible, and of solid value” ’
 
 (People
 
 v.
 
 Bassett
 
 (1968) 69 Cal.2d 122, 139 [70 Cal.Rptr. 193, 443 P.2d 777]), so as to constitute substantial evidence sufficient to support [his] conviction” of false imprisonment.
 
 [8]
 
 He argues that “when the sole witness cannot answer whether her prior testimony and statements were truthful without incriminating herself, the only logical conclusion that can be drawn is that they were untruthful in their entirety.” Defendant, in effect, claims that reliance on such preliminary hearing testimony violates “the due process right of a reliable and trustworthy conviction.”
 
 (California
 
 v.
 
 Green, supra,
 
 399 U.S. at p. 184 [26 L.Ed.2d at p. 512] (cone. opn. of Harlan, J.).) We disagree.
 

 As our Supreme Court stated in
 
 People
 
 v.
 
 Robinson
 
 (1964) 61 Cal.2d 373, 389 [38 Cal.Rptr. 890, 392 P.2d 970]: “The claim that the testimony of [the witness] must be disregarded because some of his testimony was shown to have been false is without merit. . . . No authority is cited by appellants to uphold their contention that the jury may not accept one
 
 *575
 
 portion of a witness’s testimony while rejecting another. The authorities are to the contrary.”
 

 Wigmore points out the unsoundness of the principle that if one part of the testimony is false, the entire testimony must be rejected (3A, Wigmore, Evidence (Chadboum rev.ed. 1970) § 1010, pp. 983-984):
 

 “(1) It is untrue to human nature. It is not correct that a person who tells a single lie is therefore necessarily lying throughout his testimony, nor that there is any strong probability that he is so lying. The probability is to the contrary. (2) [The trier of fact is] charged with forming a conclusion as to the truth of the testimony offered. [It is] absolutely free to believe or not to believe a given witness.
 

 “The correct principle, therefore, can go no farther than to say that the jury
 
 may
 
 disregard the testimony, not that they
 
 must
 
 disregard it; and this is the form of the rule as laid down in the great majority of jurisdictions. [Fn. omitted.]”
 

 In
 
 People
 
 v.
 
 Bodkin
 
 (1961) 196 Cal.App.2d 412 [16 Cal.Rptr. 506], the sole witness to the narcotics sale testified for the prosecution in the morning; however, when called as a witness by the defense in the afternoon, he recanted his morning testimony. The appellate court rejected defendant’s argument that the witness’s “morning testimony was perjured (because [the witness] himself said so), and perjured testimony cannot furnish any support to the conviction.”
 
 (Id.,
 
 at p. 414.) The
 
 Bodkin
 
 court stated
 
 (id.,
 
 at pp. 414-415): “It was for the court, not the witness, to determine whether he perjured himself in the morning or the afternoon. The court found that that occurred in the afternoon. This lay wholly within his prerogative, as the trier of the facts may reject a part of the testimony of a defendant or any other witness while accepting or believing other portions of his testimony. (See
 
 People
 
 v.
 
 Matlock,
 
 51 Cal.2d 682, 695 [336 P.2d 505];
 
 People
 
 v.
 
 Davis,
 
 48 Cal.2d 241, 248 [309 P.2d 1].) This rule applies to testimony which is or is claimed to be perjured.”
 

 In
 
 Pierson
 
 v.
 
 Superior Court
 
 (1970) 8 Cal.App.3d 510 [87 Cal.Rptr. 433], defendant claimed that the credibility of the sole prosecution witness at a suppression hearing was impeached to such an extent by his admission “ ‘that his testimony under oath at two previous preliminary hearings was
 
 *576
 
 either completely contradictory to his present testimony or was untruthful’ ” that “it was a denial of due process for the trial court to rely on such [present] testimony. . . .”
 
 (Id.,
 
 at p. 517.) In rejecting defendant’s contention, the
 
 Pierson
 
 court summarized the applicable law as follows (id., at pp. 518-519):
 

 “Questions as to the credibility of witnesses and the weight to be given their testimony are for the trier of facts, and, although impeaching evidence in the nature of contradictions or otherwise has been received, it is the trier of facts who must determine to what extent testimony is to be believed or disbelieved.
 
 (Hansen
 
 v.
 
 Bear Film Co.,
 
 28 Cal.2d 154, 184 [168 P.2d 946];
 
 People
 
 v.
 
 Castro,
 
 85 Cal.App. 228, 230 [259 P. 117].) In
 
 Robinson
 
 v.
 
 Robinson,
 
 159 Cal. 203 [113 P. 155], it was contended by plaintiif-appellant that an analysis of the testimony of defendant as shown by the record made it appear that some of defendant’s evidence was false, and that the court must therefore consider his whole evidence in the light of the rule declared by [former] section 2061 of the Code of Civil Procedure, that ‘a witness false in one part of his testimony is to be distrusted in others.’ The court states (p. 204): Tf we assume this claim as to what the record shows to be well founded, it still remains that the rule relied on is one solely for the guidance of the trial court and can have no pertinency in an appellate court. The trial court was the exclusive judge of all questions of credibility of witnesses and weight of evidence, and must be assumed to have considered all the evidence given in the light of such rules as are laid down by the law for the guidance of court and jury in the determination of questions of fact.’ In
 
 People
 
 v.
 
 Holman,
 
 72 Cal.App.2d 75, 89 [164 P.2d 297], the court states: ‘The rule “That a witness false in one part of his testimony is to be distrusted in others” (Code Civ. Proc., § 2061, subd. 3) “is one solely for the guidance of the trial court and can have no pertinency in an appellate court.” [Citations.] The jury might have rejected all her testimony had they seen fit, in view of her admitted contradictions, but they were not
 
 bound
 
 to do so. Such “testimony is still evidence in the case which they must receive and weigh. While they may reject it, they may, as they determine, accept as true one of the contradictory asseverations.” ’ In
 
 People
 
 v.
 
 Avena,
 
 34 Cal.App. 500 [168 P. 148], the prosecuting witness and her sister both admitted that their testimony at the trial was directly contrary to that given by them at the preliminary examination, and was false. Their explanation of the change was that they had been told that if their father was convicted he would be sent to the penitentiary and they to the detention home or reform school. The court said: ‘It was for the jury to decide whether these contradictory statements, under all the circum
 
 *577
 
 stances and facts placed before the jury, so far impeached these witnesses as to render their testimony at the trial improbable or unbelievable.’
 

 “An appellate court cannot substitute its judgment for that of the trial court on the facts unless the testimony as to a particular fact ‘in the light of the undisputed facts, is so inherently improbable and impossible of belief as in effect to constitute no evidence at all.’
 
 (Romero
 
 v.
 
 Eustace,
 
 101 Cal.App.2d 253, 254 [255 P.2d 235]; see also,
 
 Jeannerette
 
 v.
 
 Taylor,
 
 2 Cal.App.2d 568, 571 [38 P.2d 831];
 
 Gilmore
 
 v.
 
 Hoffman,
 
 123 Cal.App.2d 313, 319 [266 P.2d 833];
 
 Gackstetter
 
 v.
 
 Market Street Ry. Co.,
 
 10 Cal.App.2d 713, 718 [52 P.2d 998];
 
 People
 
 v.
 
 Bodkin,
 
 196 Cal.App.2d 412, 414-417 [16 Cal.Rptr. 506];
 
 People
 
 v.
 
 Swanson,
 
 204 Cal.App.2d 169, 172-173 [22 Cal.Rptr. 178].)”
 

 An example of a case holding testimony “so inherently improbable and impossible of belief” is
 
 People
 
 v.
 
 Casillas
 
 (1943) 60 Cal.App.2d 785 [141 P.2d 768]. In
 
 Casillas,
 
 the court said that the prosecuting witness in a rape-incest case “gave three separate, distinct and contradictory versions as to who ravished her and the circumstances surrounding the commission of the offenses.”
 
 {Id.,
 
 at p. 794.) The court held that this was an “extreme” case wherein “the evidence is so lacking in substantiality” that it “amounts] to no evidence at all.”
 
 {Ibid.)
 

 The principle established by the above cases is that absent exceptional circumstances demonstrating the witness’s testimony is inherently improbable, the fact that a witness’s testimony is false in part does not preclude a trier of fact from accepting as true the rest of it. If it can be accepted as true, testimony which establishes all the elements of a crime must necessarily constitute substantial evidence of “solid value” that such crime was committed. Moreover, the testimony of a single witness is sufficient.
 
 [9]
 
 Consequently, the court, as trier of fact, could rely solely upon Russell’s testimony to convict defendant.
 

 The trial court found that Russell’s testimony at the preliminary hearing was sufficient to find defendant guilty of false
 
 *578
 
 imprisonment.
 
 [10]
 
 There was nothing about such testimony suggesting in any way that it was inherently improbable.
 

 Moreover, contrary to defendant’s assertion, it has not been proved that her preliminary hearing testimony was false in its entirety.
 
 [11]
 
 It is true that Russell admitted that a truthful answer with respect to whether she met defendant voluntarily that night at the Jack-in-the-Box would “conflict” with her prior testimony. Even if this admission is deemed to establish that her testimony was false in part (which is the most it could show), the trier of fact could “accept as true” the remainder of her testimony. Therefore, Russell’s testimony as to all other matters constitutes evidence of solid value sufficient to sustain defendant’s conviction. There was, therefore, no due process violation.
 

 Defendant’s reliance on
 
 In re Eugene M.
 
 (1976) 55 Cal.App.3d 650 [127 Cal.Rptr. 851], is misplaced. In
 
 In re Eugene M.,
 
 the court held that the evidence was inherently untrustworthy because the entire “proof of guilt [consisted] of a prior unsworn out-of-court statement given by an apparent accomplice under threat of prosecution and thereafter repudiated under oath.”
 
 (Id.,
 
 at p. 659.) By contrast, the evidence against defendant here consisted of the sworn preliminary hearing testimony by the victim who contacted the police, voluntarily testified against defendant under oath at the preliminary hearing, and then at the trial admitted she was presently in love with defendant and refused to testify on grounds it would incriminate her.
 

 Furthermore, insofar as her responses to defense counsel’s questions might be deemed a “repudiation” under oath of at least part of her prior testimony, it is not comparable to Eugene M.’s repudiation under oath of prior unsworn statements. Indeed, Russell’s “repudiation” is more comparable to the recantation of a witness on a new trial motion or in a
 
 *579
 
 habeas corpus proceeding wherein “it is settled that the offer of a witness, after trial, to retract his sworn testimony is to be viewed with suspicion.”
 
 (In re Weber
 
 (1974) 11 Cal.3d 703, 722 [114 Cal.Rptr. 429, 523 P.2d 229].)
 

 In view of the rule that a trier of fact may accept one part of a witness’s testimony while rejecting another, we cannot say that the evidence was insufficient to support the conviction of false imprisonment or was so inherently untrustworthy that a conviction based upon it would violate due process of law.
 

 The judgment is affirmed.
 

 Cobey, J., and Allport, X, concurred.
 

 Appellant’s petition for a hearing by the Supreme Court was denied September 12, 1979. Mosk, X, was of the opinion that the petition should be granted.
 

 [1]
 

 The information had also alleged that defendant used a gun in the commission of the offense in violation of Penal Code section 12022.5.
 

 [2]
 

 The prosecution’s direct examination of Russell at the preliminary hearing consumed about nine pages of transcript.
 

 [3]
 

 Insofar as defendant may rely upon
 
 People
 
 v.
 
 Hathcock
 
 (1971) 17 Cal.App.3d 646 [95 Cal.Rptr. 221], such reliance is misplaced. In
 
 Hathcock,
 
 unlike the case at bench, the witness had been granted immunity from prosecution before making any statements and had testified on direct examination at that very trial.
 

 [4]
 

 A 1974 amendment to the California Constitution incorporated a clause in article I, section 15, providing that a criminal defendant has the right to be confronted with the witnesses against him. Such right had previously not been spelled out in the California Constitution. It appears, however, that the California clause should be construed as protecting the same rights secured by the federal Constitution.
 
 (People
 
 v.
 
 Contreras
 
 (1976) 57 Cal.App.3d 816, 818-820 [129 Cal.Rptr. 397]; see also
 
 People
 
 v.
 
 Bertoldo
 
 (1978) 77 Cal.App.3d 627, 631-632 [143 Cal.Rptr. 675].) In
 
 Contreras,
 
 the court rejected the defendant’s argument that the constitutional amendment restricted the scope of Evidence Code section 1291, subdivision (a)(2), so that decisional law prior to the amendment is no longer applicable and preliminary hearing testimony is no longer admissible against a defendant at a subsequent trial when a witness is unavailable. The court held (57 Cal.App.3d at p. 818): “[T]he 1974 amendment to the California Constitution is declaratory of a prior California constitutional right previously incorporated in the due process guarantee of former section 13 of article I and a statutory right stated in Penal Code section 686, subdivision 3 so that decisional law antedating the 1974 amendment is applicable. . . .”
 

 [5]
 

 Furthermore, from the detailed nature of the cross-examination at the preliminary hearing, it is obvious that defense counsel was aware of defendant’s version of the events and, therefore, if there were any falsity in that preliminary hearing testimony or the complaint, counsel should have known about it from his prior interview with defendant.
 

 [6]
 

 By contrast, in
 
 People
 
 v.
 
 Gibbs
 
 (1967) 255 Cal.App.2d 739 [63 Cal.Rptr. 471], cited by defendant, defense counsel’s inadequate opportunity to cross-examine the prosecution witness was reflected in the fact that there was only a one-page cross-examination of two pages of direct examination of the crucial witness.
 

 [7]
 

 Defendant also argues that the witness’s claim of privilege should have been overruled because the court’s judgment necessarily involved believing all of Russell’s preliminary hearing testimony, so there could have been no perjury therein. The premise of this argument is fallacious. The trial court obviously did not accept all of her former testimony as true or it would have convicted defendant of the charged offense of kidnaping with use of a gun, instead of the lesser offense of false imprisonment.
 

 [8]
 

 Defendant does not challenge the sufficiency of the evidence to support the conviction if Russell’s testimony is worthy of belief.
 

 [9]
 

 In
 
 People
 
 v.
 
 Rincon-Pineda
 
 (1975) 14 Cal.3d 864, 885 [123 Cal.Rptr. 119, 538 P.2d 247], our Supreme Court said that it is proper to instruct the jury that: “
 
 ‘Testimony which you believe given by one witness is sufficient for the proof of any fact.
 
 However, before finding any fact to be proved solely by the testimony of such a single witness, you should carefully review all of the testimony upon which proof of such fact depends.’ ” (Italics added.) (See Evid. Code, § 411.)
 

 [10]
 

 False imprisonment is a necessarily included lesser offense of kidnaping.
 
 (People
 
 v.
 
 Apo
 
 (1972) 25 Cal.App.3d 790, 796 [102 Cal.Rptr. 242].)
 

 [11]
 

 Defendant’s argument is premised on the unsupported, fallacious assertion that Russell’s invocations of her privilege against self-incrimination necessarily meant, as a matter of law, that all of her prior testimony was false. But her claim of privilege was not the equivalent of a confession (or claim) of perjury since she was entitled to refuse to answer any question that could furnish a single link in the chain of evidence tending to establish her guilt. (See
 
 Prudhomme
 
 v.
 
 Superior Court, supra,
 
 2 Cal.3d at p. 326;
 
 People
 
 v.
 
 Lawrence, supra,
 
 168 Cal.App.2d at pp. 516-517.) Moreover, even if she had claimed that all her preliminary hearing testimony was false, it would be for the trier of fact to determine whether her prior or her present testimony was truthful and to what extent she lied.