Filed 11/15/13  P. v. Modesto CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MIGUEL ANGEL MODESTO,<br><br>    Defendant and Appellant. | G047392<br><br>(Super. Ct. No. 12HF1105)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Carla Singer, Judge.  Affirmed as modified.

Roland G. Rubalcava for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., Theodore M. Cropley and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Miguel Angel Modesto was convicted of one count of robbery for taking a bicycle with force (Pen. Code, § 211[1]), and one count of promoting felonious conduct by members of a street gang, a crime sometimes called street terrorism. (§ 186.22, subd. (a).)[2] In this case, the street terrorism count was based on the theory he took the bicycle for the benefit of his gang, the "Family Mob." However, in supplemental briefing the Attorney General's office has recognized that in light of *People v. Rodriguez* (2012) 55 Cal.4th 1125, 1139, and the absence of any evidence Modesto acted collectively with other gang members, the street terrorism count cannot stand – the crime only applies to actions done collectively with other gang members. (*Ibid.*)

That leaves remaining the two arguments Modesto originally raised in his opening brief as the subject of this appeal: (1) Whether there was substantial evidence Modesto used force to take the bicycle and (2) whether the trial judge's comments during the trial evidenced judicial bias.

As to the first issue, there was indeed substantial evidence of the use of force, supplied by two witnesses. The first witness was a sheriff's deputy who actually saw the crime. The deputy testified he saw the owner of the bike straddling it as he talked to Modesto, and then saw Modesto use his left shoulder to bump the owner, causing him to (as the deputy put it) "go off the bike and off balance." The deputy further saw Modesto "grab[] the bike by its handlebars" and then Modesto "took off" with it. The other witness was the victim himself. He testified Modesto "just grabbed

---

[1]     Penal Code section 211 provides: "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."
        All further statutory references are to the Penal Code.
[2]     Section 186.22, subdivision (a) provides: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years."
        Modesto received a 12-year sentence for the robbery count, with the street terrorism count stayed under *People v. Mesa* (2012) 54 Cal.4th 191.

hold" of the bike by the handlebars and "took it" after he had told Modesto he needed the bicycle for work.

Modesto's argument for the lack of substantial evidence is largely based on discrepancies confined to the victim's statements. At trial the victim said Modesto made no physical contact with him in the course of grabbing the bike, while another deputy testified the victim told him, after the incident, that Modesto *had* bumped his shoulder in the process of grabbing the bicycle away. As Modesto frames the issue in this appeal, the victim had to be lying at some point, ergo there was no substantial evidence of the force or fear necessary to commit robbery. (See § 211 [defining robbery as a taking against an owner's will by "force or fear"].)

The argument is a non sequitur. A trier of fact is free to believe all or part of a witness's testimony. (E.g., *People v. Maxwell* (1979) 94 Cal.App.3d 562, 576 ["'The jury might have rejected all her testimony had they seen fit, in view of her admitted contradictions, but they were not *bound* to do so. Such "testimony is still evidence in the case which they must receive and weigh. While they may reject it, they may, as they determine, accept as true one of the contradictory asseverations."'"]; *Pierson v. Superior Court* (1970) 8 Cal.App.3d 510, 517-519 [rejecting argument that sole prosecution witness at preliminary hearing was so impeached by his testimony at two previous preliminary hearings that the trial court could not "rely" on the witness's "present testimony"]; *People v. Ross* (1941) 46 Cal.App.2d 385, 396-397 [in case of prosecution of two brothers, observing that jury knew witness "had been impeached" and knew "they had a right to reject his testimony entirely," but even so the question of the witness's "credibility and of the weight to be given to his testimony were to be determined solely by the jury"]; *People v. Holman* (1945) 72 Cal.App.2d 75, 89-90 [holding jury could still rely on parts of testimony of witness which was otherwise "self-contradictory"].)

In this case, any discrepancy in the victim's statements is readily explainable by Modesto's gang connection. This victim was clearly reluctant to testify

3

against a gang member. At the sentencing hearing the trial judge specifically remarked the witness "was terrified" of Modesto because "he knew you were a gang member." And so it is quite understandable that the victim was reluctant in open court to give voice to the bumping which the deputy saw. But that reluctance hardly *required* the jury to disbelieve the testimony of the deputy, much less the victim's own previous statement to another deputy.

The second argument is entirely based on fragments of the trial court's remarks taken out of context. Modesto's opening brief first quotes the judge telling Modesto's defense attorney that she was "repeating herself" in her closing argument, as if the judge were being peevish and gratuitously cutting counsel off from the full development of her argument. The opening brief omits what immediately preceded the "repeating yourself" comment – namely defense counsel's own question to the judge as the noon recess was approaching: "Do you want me to keep going?" The judge answered: "Well, how much more time do you need? You're repeating yourself at this point." In context, the judge was simply responding to defense counsel's question.

Modesto's other claims of prejudice by the trial judge all come from the sentencing hearing. The essential thrust of these was that Modesto had not acted wisely in rejecting what had apparently been a very favorable plea deal.[3] In context, all these comments, like the "repeating yourself" comment just discussed, were made in response to arguments being presented at the hearing to the effect the court should go easy on Modesto because he was 19 years old. The overall point the judge was making was that Modesto was an experienced gang member, that his crimes were becoming progressively worse, and he thus posed a danger to the community. Even the judge's "Congratulations"

---

[3] The four excerpts are: (1) a characterization of Modesto's defense as "cockamamy"; (2) a statement to Modesto that he was "not a child"; (3) noting the jury took less time to deliberate than Modesto's counsel had spent in closing argument; (4) telling Modesto "no one is ever going to credit you with intelligence and sound judgment," because you rejected a prior offer before going to trial; and (5) a comment, unquestionably partially sarcastic, that "if you come to court again, you're looking at 25 years to life. Congratulations."

sarcasm was made in the context of explaining to an errant young man that he faced much worse by way of punishment in the future if he didn't mend his ways.[4] We have not seen much evidence this "tough love" approach is especially effective, but neither can a tough sentencing speech support reversal.

Rather than burden the trial court with the task of striking the street terrorism count under *Rodriguez*, we do so ourselves and hereby modify the judgment to strike the section 186.22, subdivision (a) street terrorism count, and direct the clerk of the trial court to prepare an amended abstract of judgment reflecting this modification and send a certified copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


ARONSON, J.

---

[4] When read as a whole, the judge's statements show far more concern and solicitude than derision. The "Congratulations" comment was in the midst of trying to get the point across that if Modesto commits any more crimes he is looking at his third strike: "And your crimes are getting worse and worse and they're going to effect you more and more negatively. Because now you've got enough strikes so that if you come to court again, you're looking at 25 years to life. Congratulations. Or more. And a judge is going to be hard-pressed to find a reason not to give you a maximum sentence, particularly if you continue with this gang thing."